Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Karena K. Ioannou
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Mattel, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTEL, INC., | CIVIL ACTION No. ___ |
| *Plaintiff* | |
| v. | |
| CHONGQING SENJIANAN E-COMMERCE CO., LTD., DONGGUAN CHENSHENG PRINTING CO., LTD., DONGGUAN SONGLI PLASTICS INDUSTRY CO., LTD., GUANGZHOU MAZAIFEI PRINTING PRODUCTS CO., LTD., GUANGZHOU XINGMANYIN CULTURAL LNNOVATION CO., LTD., HANGZHOU AT SPORTS PRODUCTS CO., LTD., HANGZHOU FUYANG WANQUAN PACKING & PRINTING FACTORY, HANGZHOU LET'S PARTY CO., LTD., HEBEI TUANYUE IMP & EXP CO., LTD., HEILONGJIANG YOUSI TRADE CO., LTD., LUCTA STORE, MATTELS TOY WORLD STORE, NANNING YOUKESHU ELECTRONIC COMMERCE CO., LTD., NINGBO HAISHU DEYIN HANDICRAFT CO., LTD., PIKACHU CARD TOYS STORE, SHANTOU ENJOY STAR PLASTIC CO., LTD., SHENZHEN BEST4U TECHNOLOGY CO., LTD., SHENZHEN KAIXINGMEI LEATHER GIFT CO., LTD., SHENZHEN LIANGCHEN TECHNOLOGY CO., | **COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

LTD., SHIJIAZHUANG AOFEITE IMP & EXP CO.,
LTD., SHIJIAZHUANG XING AN IMPRT &
EXPORT CO., LTD., SHOP1100051186 STORE,
SHOP4040039 STORE, SHOP911060160 STORE,
SO SO BEAUTIFUL TOY STORE, YANGZHOU
GIMEZ PRINTING CO., LTD., YIWU ASQI
PACKAGING CO., LTD., YIWU DAZHUANG
POKER CO., LTD, YIWU DESK E-COMMERCE
FIRM, YIWU JIESHI PACKING PRODUCTS CO.,
LTD. and ZHEJIANG ZEBULUN INTELLIGENT
TECHNOLOGY CO., LTD.

*Defendants*

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Mattel** | Mattel, Inc. |
| **Defendants** | Chongqing Senjianan E-Commerce Co., Ltd., Dongguan Chensheng Printing Co., Ltd., Dongguan Songli Plastics Industry Co., Ltd., Guangzhou Mazaifei Printing Products Co., Ltd., Guangzhou Xingmanyin Cultural Lnnovation Co., Ltd., Hangzhou AT Sports Products Co., Ltd., Hangzhou Fuyang Wanquan Packing & Printing Factory, Hangzhou Let's Party Co., Ltd., Hebei Tuanyue Imp & Exp Co., Ltd., Heilongjiang Yousi Trade Co., Ltd., Lucta Store, Mattels Toy World Store, Nanning Youkeshu Electronic Commerce Co., Ltd., Ningbo Haishu Deyin Handicraft Co., Ltd., Pikachu Card Toys Store, Shantou Enjoy Star Plastic Co., Ltd., Shenzhen Best4U Technology Co., Ltd., Shenzhen Kaixingmei Leather Gift Co., Ltd., Shenzhen Liangchen Technology Co., Ltd., Shijiazhuang Aofeite Imp & Exp Co., Ltd., Shijiazhuang Xing An Imprt & Export Co., Ltd., Shop1100051186 Store, Shop4040039 Store, Shop911060160 Store, So So Beautiful Toy Store, Yangzhou Gimez Printing Co., Ltd., Yiwu Asqi Packaging Co., Ltd., Yiwu Dazhuang Poker Co., Ltd, Yiwu Desk E-Commerce Firm, Yiwu Jieshi Packing Products Co., Ltd. and Zhejiang Zebulun Intelligent Technology Co., Ltd. |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant |

| | |
|---|---|
| | Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Deana Dec.** | Declaration of Anye Deana in Support of Plaintiff's Application |
| **Ioannou Dec.** | Declaration of Karena K. Ioannou in Support of Plaintiff's Application |
| **UNO Products** | Card games sold under the UNO brand, including the classic UNO game, UNO Attach, UNO Wild Jackpot, UNO MOD and more, including themed card decks |
| **UNO Marks** | U.S. Trademark Registration Nos.: 1,005,397 for "UNO" for goods in Class 28; 5,125,593 for "UNO" for goods in Class 9; and 5,618,477 for "DOS" for goods in Class 28. |
| **Counterfeit Products** | Products bearing or used in connection with the UNO Marks, and/or products in packaging and/or containing labels bearing the UNO Marks, and/or bearing or used in connection with marks that are confusingly similar to the UNO Marks and/or products that are identical or confusingly similar to the UNO Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |

| | |
|---|---|
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a corporation organized and existing under the laws of the State of Delaware, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.     This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the UNO Marks, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's UNO Products by Defendants.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

controversy.

3.    Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R.

§ 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k),

because, upon information and belief, Defendants regularly conduct, transact and/or solicit business

in New York, and/or derive substantial revenue from their business transactions in New York and/or

otherwise avail themselves of the privileges and protections of the laws of the State of New York

such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of

fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused

injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have

consequences in New York, for example:

a.    Upon information and belief, Defendants were and/or are systematically

directing and/or targeting their business activities at consumers in the U.S., including New

York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress

as well as any and all as yet undiscovered User Accounts, through which consumers in the

U.S., including New York, can view one or more of Defendants' Merchant Storefronts that

each Defendant operates, uses to communicate with Defendants regarding their listings for

Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit

Products for delivery in the U.S., including New York, as a means for establishing regular

business with the U.S., including New York.

b.    Upon information and belief, Defendants are sophisticated sellers, each

operating one or more commercial businesses through their respective User Accounts, using

their Merchant Storefronts to manufacture, import, export, advertise, market, promote,

distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products

at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

      c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

      d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

      e.    Upon information and belief, Defendants are aware of Plaintiff, its UNO Products and UNO Marks and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.    Plaintiff Mattel, Inc. is a corporation, with a principal place of business at organized and existing under the laws of the State of Delaware, with its headquarters located at 333 Continental Boulevard, TWR 15-1, El Segundo, CA 90245.

6.    Upon information and belief, Defendants are merchants on the Alibaba and/or AliExpress online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the printouts of screenshots of Defendants' Merchant Storefronts in **Exhibit C**.

**GENERAL ALLEGATIONS**

**Plaintiff and Its Well-Known UNO Products**

7.     Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys and games under its iconic brands, including, but not limited to: Barbie, UNO, Hot Wheels, American Girl and Fisher-Price.

8.     Mattel Products are sold worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target, Walgreens, Amazon and many others.

9.     One of Mattel's most popular and successful brands is UNO®.   The classic UNO card game is a fun, fast-paced card game wherein players begin with seven cards, and through each turn, attempt to match a card in their hand with a card on the deck, or be forced to draw an additional card. When a player has a single card remaining, he or she must announce "UNO!" to the other players.  The first player to rid themselves of all the cards in their hand before their opponent wins.  Sample UNO brand products are attached hereto as **Exhibit A** and incorporated herein by reference.

10.     In addition to the classic UNO game described above, Mattel has also released additional games under its UNO brand, such as UNO Attack, UNO Wild Jackpot, UNO MOD and more, including themed card decks.

11.     In 2018, UNO was inducted into the Toy Hall of Fame[2] and most recently, UNO has received the NPD Group's Toy Industry Award for the Top Selling Toy of 2020 in the Game/Puzzles subcategory.[3]

12.     This year, Mattel has announced its global celebration to mark the 50th anniversary of

---

[2] *See* Sarah Jackson, *The Magic 8 Ball just made the Toy Hall of Fame – see what else made the cut.* Today (Nov. 9, 2018), https://www.today.com/popculture/magic-8-ball-uno-pinball-inducted-national-toy-hall-fame-t141678.
[3] *See* Robert Hutchins, *LEGO, Spin Master, and Warner Bros among winners of the NPD's Global and European Toy Industry Performance Awards*, toynews (Jan. 27, 2021), https://www.toynews-online.biz/2021/01/27/lego-spin-master-and-warner-bros-among-winners-of-the-npds-global-and-european-toy-industry-performance-awards/.

UNO.[4]

13.     While Mattel has gained significant common law trademark and other rights in its UNO Marks and UNO Products through use, advertising and promotion, Mattel also protected its valuable trademark rights to the UNO brand by filing for and obtaining federal trademark registrations.

14.     For example, Mattel owns the following U.S. Trademark Registration Nos.: 1,005,397 for "UNO" for goods in Class 28; 5,125,593 for "UNO" for goods in Class 9; and 5,618,477 for "DOS" for goods in Class 28. True and correct copies of the registrations for the UNO Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

15.     The UNO Marks are currently in use in commerce in connection with UNO Products. The UNO Marks were first used in commerce on or before the date of first use as reflected in the registrations attached hereto as **Exhibit B**.

16.     U.S. Trademark Registration No. 1,005,397 is valid, subsisting and incontestable.

17.     The success of the UNO Products is due in part to Mattel's marketing and promotional efforts.  These efforts include advertising and promotion television, Mattel's website, retailer websites, print and internet-based advertising and placement of the UNO brand products at dozens of authorized major retail outlets, both domestically and abroad, including New York.

18.     Mattel's success is also due to its use of the highest quality materials and processes in making the UNO Products.

19.     Additionally, Mattel owes a substantial amount of the success of the UNO Products to its consumers and word-of-mouth buzz that its consumers have generated.

20.     Mattel's efforts, the quality of the UNO Products and the word-of-mouth buzz generated by its consumers have made the UNO Marks and UNO Products prominently placed in

---

[4] *See* License Global (Jan. 13, 2021), *Mattel Celebrates 50th Anniversary of 'UNO'*, https://www.licenseglobal.com/toys-games/mattel-celebrates-50th-anniversary-uno.

the minds of the public. Members of the public have become familiar with the UNO Marks and UNO Products and have come to associate them exclusively with Mattel.  Mattel has acquired a valuable reputation and goodwill among the public as a result of such associations.

21.    Mattel has gone to great lengths to protect its interests in the UNO Marks and UNO Products. No one other than Mattel and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the UNO Marks, or use the UNO Marks in connection with goods or services or otherwise, without the express permission of Mattel.

**Alibaba, AliExpress and Defendants' User Accounts**

22.    Alibaba and AliExpress are online marketplace and e-commerce platforms which allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell and ship their wholesale and retail products originating from China to consumers worldwide and specifically to consumers residing in the U.S., including New York.

23.    As some of the leaders of China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide.[5]  International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress.  For example, in 2016, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[6]  The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[7]  Additionally, according to *Business Insider*,

---

[5]*See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, Forbes (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.
[6] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* Digitalcommerce360.com (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.
[7] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, Digitalcommerce360.com

excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[8] In 2021, Alibaba set a new Singles Day record with $84.5 billion in sales across the eleven (11) day event.

24.     As recently addressed in the *Wall Street Journal*, *Fortune* and the *New York Times* and other reputable publications,[9] several federal lawsuits have been filed against China-based sellers on Alibaba and AliExpress (along with these same online marketplace platforms themselves and stand-alone websites)[10] in light of the astronomical number of counterfeit and infringing products are offered for sale and sold at a rampant rate.[11]

25.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and Merchant Storefronts on Alibaba and/or AliExpress as well as potential yet undiscovered additional online marketplace platforms.

---

(Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[8] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, Business Insider (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[9] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, Wall Street Journal (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, Fortune (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* Wall Street Journal (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* The New York Times (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[10] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, Wall Street Journal (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, Fortune (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* Wall Street Journal (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y.

[11] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* Marketwatch (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, Wall Street Journal (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; and Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, fortune (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

26.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

27.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

28.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## Defendants' Wrongful and Infringing Conduct

29.     Particularly in light of Plaintiff's success with its UNO Products, as well as the reputation they have gained, Plaintiff and its UNO Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its UNO Products and UNO Marks, and Plaintiff investigates and enforces against such activities.

30.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Screenshots of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference.

31.     Defendants are not, and have never been, authorized by Plaintiff or any of its

authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the UNO Products or to use the UNO Marks, or any marks that are confusingly similar to the UNO Marks.

32.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's UNO Products, only with minor variations that no ordinary consumer would recognize.

33.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C**.

34.     Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit C**.

35.     For example, below on the left is an image of one of Plaintiff's UNO Products. Depicted further below is a listing for Defendant Hangzhou Let's Party Co., Ltd.'s Counterfeit Product ("Hangzhou Let's Party Co., Ltd. Infringing Listing" and "Hangzhou Let's Party Co., Ltd. Counterfeit Product," respectively). The Hangzhou Let's Party Co., Ltd.  Infringing Listing appears on Defendant's Merchant Storefront, https://mymoonpie.en.alibaba.com, and offers the Hangzhou Let's Party Co., Ltd. Counterfeit Product for $1.70 - $2.10 per item, using, featuring and/or

incorporating one or more of the UNO Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing title "**UNOS** Family Paper Card Game, with 112 Cards in a Sturdy Storage" (emphasis added) and in the description and or product images in the body of the listing.  Further, the Hangzhou Let's Party Co., Ltd Counterfeit Product is virtually identical to one of Plaintiff's UNO Products and features and/or incorporates one or more of the UNO Marks.  There is no question that the Hangzhou Let's Party Co., Ltd Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's UNO Products or that the Hangzhou Let's Party Co., Ltd Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the UNO Marks:

<u>**UNO Product**</u>                            <u>**Defendant's Counterfeit Product**</u>

 

36.    By way of another example, below on the left is an image of one of Plaintiff's UNO Products. Depicted further below is a listing for Defendant Guangzhou Mazaifei Printing Products Co., Ltd.'s Counterfeit Product ("Guangzhou Mazaifei Printing Products Co., Ltd. Infringing Listing" and "Guangzhou Mazaifei Printing Products Co., Ltd.  Counterfeit Product," respectively). The Guangzhou Mazaifei Printing Products Co., Ltd. Infringing Listing appears on Defendant's

Merchant Storefront, https://gzfeima.en.alibaba.com, and offers the Guangzhou Mazaifei Printing Products Co., Ltd. Counterfeit Product for $0.60 - $1.20 per item, using, featuring and/or incorporating one or more of the UNO Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing title "Mass selling customized **unoes** Cards playing cards" (emphasis added) and in the description and or product images in the body of the listing. Further, the Guangzhou Mazaifei Printing Products Co., Ltd. Counterfeit Product is virtually identical to one of Plaintiff's UNO Products and features and/or incorporates one or more of the UNO Marks. There is no question that the Guangzhou Mazaifei Printing Products Co., Ltd. Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's UNO Products or that the Guangzhou Mazaifei Printing Products Co., Ltd. Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the UNO Marks:

| **UNO Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

37.    As another example, below on the left is an image of one of Plaintiff's UNO Products. Depicted further below is a listing for Defendant Mattels Toy World Store's Counterfeit Product ("Mattels Toy World Store Infringing Listing" and "Mattels Toy World Store Counterfeit Product," respectively). The Mattels Toy World Store Infringing Listing appears on Defendant Mattels Toy

World Store's Merchant Storefront, https://www.aliexpress.com/store/912612100, and offers the Mattels Toy World Store Counterfeit Product for $4.99 per item, using, featuring and/or incorporating one or more of the UNO Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing.  Further, the Mattels Toy World Store Counterfeit Product is virtually identical to one of Plaintiff's UNO Products and features and/or incorporates one or more of the UNO Marks.  There is no question that the Mattels Toy World Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's UNO Products or that the Mattels Toy World Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the UNO Marks:

**UNO Product**                    **Defendant's Counterfeit Product**

38.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the UNO Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the UNO Marks in order to confuse consumers into believing that such Counterfeit Products are the UNO Products and aid in the promotion and sales

of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the UNO Marks, after Plaintiff filed for and obtained federal registrations in the UNO Marks, as alleged above, and after Plaintiff's UNO Products and UNO Marks became well-known to the purchasing public.

39.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the UNO Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the UNO Products, and in bad faith adopted the UNO Marks.

40.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the UNO Marks and UNO Products.

41.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

42.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the UNO Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

43.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Trademark Counterfeiting)
### [15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]

44.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45.     Plaintiff is the exclusive owner of all right and title to the UNO Marks.

46.     Plaintiff has continuously used the UNO Marks in interstate commerce since on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

47.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its UNO Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the UNO Marks and/or used spurious designations that are identical with, or indistinguishable from, the UNO Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

48.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the UNO Marks through their participation in such activities.

49.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the UNO Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing,

14

importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

50.     Defendants' unauthorized use of the UNO Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the UNO Marks.

51.     Defendants' actions constitute willful counterfeiting of the UNO Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

52.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the UNO Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable UNO Marks.

53.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or

statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

54.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55.     Plaintiff has continuously used the UNO Marks in interstate commerce since on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

56.     Plaintiff, as owner of all right, title and interest in and to the UNO Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

57.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the UNO Marks.

58.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the UNO Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the UNO Products and/or related products bearing the UNO Marks into the stream of commerce.

59.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the UNO Marks and/or which are identical or confusingly similar to the UNO Marks.

60.     Defendants knowingly and intentionally reproduced, copied and colorably imitated

the UNO Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

61.      Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the UNO Marks.

62.      Defendants' egregious and intentional use of the UNO Mark in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's UNO Products or are otherwise associated with, or authorized by, Plaintiff.

63.      Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the UNO Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

64.      Defendants' continued, knowing, and intentional use of the UNO Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered UNO Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

65.      As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the UNO Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such

substantial and irreparable injury, loss and damage to Plaintiff and the valuable UNO Marks.

Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

66.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67.    Plaintiff, as the owner of all right, title and interest in and to the UNO Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

68.    The UNO Marks are inherently distinctive and/or has acquired distinctiveness.

69.    Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the UNO Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are UNO Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with

18

Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the UNO Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

70.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's UNO Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the UNO Marks, Defendants have traded off the extensive goodwill of Plaintiff and its UNO Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its UNO Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

71.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the UNO Marks would cause confusion, mistake or deception among purchasers, users and the public.

72.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its UNO Products and UNO Marks.

19

73.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its UNO Products and by depriving Plaintiff of the value of its UNO Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the UNO Marks.

74.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

75.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

76.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its UNO Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

77.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

78.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

79.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

80.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its UNO Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its UNO Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

81.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing

activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.     In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.     For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered UNO Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation

of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of damages to be proven at trial for common law unfair competition;

F.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

      ii.  directly or indirectly infringing in any manner Plaintiff's UNO Marks;

      iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's UNO Marks to identify any goods or services not authorized by Plaintiff;

      iv.  using Plaintiff's UNO Marks or any other marks that are confusingly similar to the UNO Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

      v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by

Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   providing   services   to   Defendants,   Defendants'   User   Accounts   and

> Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

> xiii.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.     For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe Plaintiff's UNO Marks, or bear any marks that are confusingly similar to the UNO Marks;

H.     For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiff's UNO Marks, or bear any marks that are confusingly similar to the UNO Marks pursuant to 15 U.S.C. § 1118;

I.     For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.     For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.     For an award of exemplary or punitive damages in an amount to be determined by the

Court;

L.      For Plaintiff's reasonable attorneys' fees;

M.      For all costs of suit; and

N.      For such other and further relief as the Court may deem just and equitable.


## **DEMAND FOR JURY TRIAL**


Plaintiff respectfully demands a trial by jury on all claims.


Dated: March 24, 2022                    Respectfully submitted,

                                         EPSTEIN DRANGEL LLP

                                         BY: _____
                                         Karena K. Ioannou
                                         kioannou@ipcounselors.com
                                         Jason M. Drangel (JD 7204)
                                         jdrangel@ipcounselors.com
                                         Ashly E. Sands (AS 7715)
                                         asands@ipcounselors.com
                                         Danielle S. Futterman DY 4228)
                                         dfutterman@ipcounselors.com
                                         Gabriela N. Nastasi
                                         gnastasi@ipcounselors.com
                                         60 East 42nd Street, Suite 2520
                                         New York, NY 10165
                                         Telephone:      (212) 292-5390
                                         Facsimile:      (212) 292-5391
                                         *Attorneys for Plaintiff*
                                         *Mattel, Inc.*